UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FAHEEM ABDUL JALEEL,            :

        Petitioner            :     CIVIL ACTION NO. 3:26-412

v.            :            (JUDGE MANNION)

JESSICA SAGE, *et al.*,            :

        Respondents            :

## MEMORANDUM

Pending before the court is petitioner Faheem Abdul Jaleel's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Jaleel's petition will be **DENIED**.

## I.   BACKGROUND

Petitioner Faheem Abdul Jaleel, a citizen of Afghanistan, entered the United States on September 14, 2005, as a refugee. (Doc. 9-2 at 2). On September 25, 2009, his status was adjusted to lawful permanent resident. *Id.*

On April 26, 2012, Jaleel, a minor at the time, was convicted as an adult in New York state court of attempted murder and first-degree assault. *Id.* He was sentenced to a sixteen year term of imprisonment to be followed by a five year term of post release supervision. *Id.*

On August 30, 2024, the Department of Homeland Security ("DHS") detained Jaleel. (Doc. 9-5 at 1). He was subsequently charged as removable pursuant to §§237(a)(2)(A)(ii) and 101(a)(43)(A) of the Immigration and Nationality Act ("INA"). (Doc. 9-2 at 2). On March 27, 2025, Jaleel was ordered removed and denied withholding of removal and deferral of removal under the Convention Against Torture ("CAT"). (Doc. 9-7).

On May 2, 2025, Jaleel was sent a travel document ("TD") packet, which he refused to complete. (Doc. 9-3, ¶ 6). As a result, he was given a failure to comply ("FTC") letter. *Id.*, ¶ 7.

On August 7, 2025, the Afghanistan consulate interviewed Jaleel, and he informed the consulate that he did not want to return to Afghanistan and requested that they not issue a TD. *Id.*, ¶ 8.

On September 25, 2025, Enforcement and Removal Operations ("ERO") requested a travel letter for Jaleel. (Doc. 9-8, ¶ 3).

On October 17, 2025, Jaleel requested to meet again with the Afghanistan consulate, this time requesting that a TD be issued, and his removal to a country other than Afghanistan. (Doc. 9-3, ¶ 9). On December 12, 2025, Jaleel was again interviewed by the Afghanistan consulate, and on December 18, 2025, a TD application was submitted. *Id.*, ¶¶ 11, 12.

On January 5, 2026, a TD was issued by the Afghanistan consulate in Ottawa, Canada. *Id.*, ¶ 13. However, on January 15, 2026, the Government learned that Jaleel is not removable using a TD from the Ottawa consulate, as the airline used exclusively for transport to Afghanistan requires a valid transportation letter from Afghanistan. *Id.* Accordingly, on March 17, 2026, ERO again requested a travel letter from Afghanistan, which, to date, has not been provided. (Doc. 9-8, ¶ 3); (Doc. 9-3, ¶ 14).

Jaleel is currently detained at Moshannon Valley Processing Center pursuant to 8 U.S.C. §1231. However, he filed the present petition for a writ of habeas corpus while he was detained at FCI Lewisburg on February 18, 2026. (Doc. 1). On March 20, 2026, Respondents filed their response. (Doc. 9). On May 4, 2026, Jaleel filed a reply to their response. (Doc. 13). The petition is now ripe for disposition.

## II.   LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a

discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

However, "[w]ith respect to certain factual issues, the burden of proof may

be shifted to the state because of specific policy considerations or because

the available evidence is likely to be in the hands of the state." *Id.*

## III.    DISCUSSION

### a. Jurisdiction

The court's authority to hear noncitizen habeas petitions under 28

U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9),

and (a)(2)(B)(ii).

§1252(g) states "[e]xcept as provided in this section and

notwithstanding any other provisions of law . . . no court shall have

jurisdiction to hear any cause or claim by or on behalf of any alien arising

from the decision or action by the Attorney General to commence

proceedings, adjudicate cases, or execute removal orders against any alien

under this chapter." 8 U.S.C. §1252(g). Here, the court's jurisdiction is not

barred by §1252(g) as Jaleel's claim does not challenge the commencement

of removal proceedings, the Attorney General's decision to adjudicate, nor

the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination

Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court

of jurisdiction "only to [these] three discrete actions").

- 4 -

§1252(b)(9) states "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the court's jurisdiction is not barred by §1252(b)(9) as Jaleel does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as Jaleel does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held

- 5 -

that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

### b. Exhaustion of administrative remedies

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Jaleel is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six months of detention to noncitizens held beyond the 90-day removal period set by §1231).

### c. Merits

Jaleel argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. Where an immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C.

- 6 -

§1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id.* at 701. Accordingly, the court reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the

- 7 -

period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Where a detainee fails to cooperate with removal efforts, courts exclude the uncooperative time when considering whether detention is unconstitutionally prolonged. *Francis S.M. v. Decker*, 2020 WL 1956053, at *4 (D.N.J. Apr. 23, 2020) ("Crucially, an alien cannot meet the initial burden if he or she has failed to cooperate with removal efforts . . . '*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock'" (quoting *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see also Xiangquan v. Holder*, 2013 WL 1750145, at *3 (D.N.J. Apr. 23, 2013) ("an alien who, during his/her presumptive *Zadvydas* based period takes actions delaying his/her removal (e.g., by refusing to cooperate with the ICE's removal efforts), cannot demand his/her release upon expiration of these six months . . . Rather, the period affected by the alien's obstructive actions is excluded from the presumptive period articulated in *Zadvydas*, thus causing a quasi-tolling mimicking, in its operation") (internal citations omitted); *see also Qasemi v. Kurzdorfer*, 2025 WL 2938607 (W.D.N.Y. Oct. 16, 2025) (finding that relief

- 8 -

should not be afforded where the petitioner's "own noncooperation caused his initial period of detention to be wasted").

Here, Jaleel was ordered removed on March 27, 2025, (Doc. 9-7), meaning that his order of removal became final on April 27, 2025—the day after the 30-day deadline to file an appeal to the Board of Immigration Appeals ("BIA"), which Jaleel did not do. 8 C.F.R. §1003.38(b) ("The Notice of Appeal from a Decision of an Immigration Judge . . . shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an immigration judge's oral decision"); *see also* 8 C.F.R. §1241.1(c) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"). Thus, his detention was presumptively reasonable until October 27, 2025—six months after the order of removal became final.

However, from May 2, 2025, to October 17, 2025—a period of five months and fifteen days—Jaleel did not cooperate or assist with his removal. Given that his own noncooperation is responsible for delaying his removal by five months and fifteen days, that time is excluded from the court's consideration of whether his detention is unconstitutionally prolonged.

- 9 -

Therefore, his detention was truly presumptively reasonable until April 11, 2026. Though the court notes that Jaleel was also in immigration custody for nearly nine months before his order of removal became final.

The question, therefore, becomes whether Jaleel has sustained his burden to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Jaleel did sustain this burden in his petition, showing that it appeared he was unlikely to be removed any time soon at the time he filed his petition. However, the Government has sufficiently rebutted this showing.

The Government has made good faith efforts at executing Jaleel's removal. Indeed, on January 5, 2026, a TD was issued by the Afghanistan consulate in Ottawa, Canada. (Doc. 9-3, ¶ 13). However, on January 15, 2026, the Government learned that Jaleel is not removable using a TD from the Ottawa consulate. *Id.* Accordingly, on March 17, 2026, ERO again requested a travel letter from Afghanistan, which, to date, has not been provided. (Doc. 9-8, ¶ 3); (Doc. 9-3, ¶ 14). Courts within this district have found that the Government sufficiently rebutted the petitioner after periods of prolonged detention longer than the one at issue, and denied relief, where the Government had made efforts at completing the petitioner's removal, maintained contact with the relevant embassy, and requested updates on

- 10 -

travel documents. *See e.g., Appiah v. Lowe*, 2025 WL 510974, at *4 (M.D.Pa. Feb. 14, 2025).

Furthermore, in *Qasemi*, the court found the Government's actions to be constitutionally sufficient where it was attempting to obtain a TD from Afghanistan, "a country with which the United States has no formal diplomatic relations and which has altered its own travel requirements during the course of those negotiations." 2025 WL 2938607, at *5. The court further reasoned that:

> Though Petitioner emphasizes the lack of visible progress towards his removal, "the reasonableness of detentions pending deportation cannot be divorced from the reality of the bureaucratic delays that almost always attend such removals" . . . There is no evidence that political conditions with Afghanistan "render removal virtually impossible," nor are the delays in this case "so extraordinarily long" that the proper inference is that a travel document "will likely never issue."

*Id.* (internal citations omitted).

Here, the Government has sufficiently maintained efforts to ensure that Jaleel is deported in the reasonably foreseeable future. Furthermore, DHS has been able to obtain travel letters from Afghanistan in the past and has completed hundreds of removals to the country in recent years. (Doc. 9-8, ¶¶ 4-5). Thus, once a TD is issued by the proper consulate, there is a

- 11 -

significant likelihood of Jaleel's removal in the reasonably foreseeable future.

Simply put, the Government has rebutted Jaleel's showing.

## IV.   CONCLUSION

For the foregoing reasons, Jaleel's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **DENIED**. An appropriate order shall issue.

MALACHY E. MANNION
**United States District Judge**

**DATE:** 5/5/26

26-412-01

- 12 -